IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAIʻI

| | |
|---|---|
| CARL MAYBIN,<br><br>        Plaintiff,<br><br>    vs.<br><br>HILTON GRAND VACATIONS COMPANY, LLC,<br><br>        Defendant. | CIVIL NO. 17-00489 DKW-KSC<br><br>**ORDER DENYING DEFENDANT'S MOTION TO DISMISS COUNT II** |

## INTRODUCTION

Hilton seeks dismissal of Maybin's hostile work environment cause of action for failure to exhaust administrative remedies. Although the hostile work environment claim was not included in Maybin's Charge of Discrimination filed with the Equal Employment Opportunity Commission, he did include facts supporting that claim in the Pre-Complaint Questionnaire submitted to the agency, but which was not provided to Hilton. Because the Charge itself is deficient in recording Maybin's theory of liability, due at least in part to the actions of the agency completing the Charge form, Maybin may present the Questionnaire as evidence that the claim was properly exhausted, pursuant to *B.K.B. v. Maui Police Dep't*, 276 F.3d 1091, 1102 (9th Cir. 2002), as amended (Feb. 20, 2002).

Accordingly, the Court finds that Maybin has exhausted his hostile work environment claim and DENIES Hilton's Motion to Dismiss Count II.

## BACKGROUND

### I. Factual Background

The Court and the parties are familiar with the facts, which were previously set forth in the Court's order denying Hilton's motion for summary judgment on Maybin's Count I ADEA age discrimination claim. *See* Dkt. No. 36 (3/6/18 Order).[1] The Court briefly recounts matters relevant to Hilton's present exhaustion arguments.

Maybin was hired by Hilton as a sales agent in September 2015 when he was 55 years old. Compl. ¶ 7. According to Maybin, shortly after he was hired, he witnessed Hilton's Senior Director of Sales, Joshua Kannel, display overt animus towards older sales agents by making negative comments about their abilities at sales meetings. Compl. ¶ 9. On March 1, 2016, Maybin was assigned a new manager, Tony Wilson, who also "treated [Maybin] in a threatening and hostile manner," Compl. ¶ 11, singling him out and making improper "remarks to [Maybin] about his age." Compl. ¶ 13. Maybin asserts that he "made numerous requests to Human Resources and upper management to be changed to a different team, but

---

[1]The Court's 3/6/18 Order is also available at 2018 WL 1177914.

[Hilton] refused." Compl. ¶ 14. Maybin contends that he was wrongfully terminated in August 2016 due to age discrimination. Compl. ¶¶ 16–17.

## II. Procedural Background

Maybin filed his Charge of Discrimination with the EEOC on January 4, 2017 (Decl. of Julia Montenegro Ex. 1, Dkt. No. 32-1), which then issued a Notice of Right to Sue on June 30, 2017. The EEOC Charge indicates that Maybin suffered discrimination due to his age and was terminated in violation of the ADEA. On September 27, 2017, Maybin filed his Complaint alleging three counts under the ADEA: (1) age discrimination; (2) hostile work environment; and (3) retaliation. Compl. ¶¶ 18–28, Dkt. No. 1. On November 21, 2017, the parties stipulated to the dismissal with prejudice of Maybin's Count III retaliation claim. Dkt. No. 17. The Court previously denied Hilton's motion for summary judgment on Maybin's Count I ADEA age discrimination claim. Dkt. No. 36.

Hilton currently seeks to dismiss Maybin's Count II hostile work environment claim for failure to exhaust. It is undisputed that Maybin's EEOC Charge does not reference or describe a hostile work environment claim. Nonetheless, in opposition, Maybin produced a Pre-Complaint Questionnaire submitted to the Hawaii Civil Rights Commission ("HCRC"), dated August 2, 2016, that he sent to Kris Kaopuiki, the EEOC investigator who Maybin avers "handled [his] Charge of Discrimination." Decl. of Carl Maybin ¶¶ 1–2, Dkt. No. 38-1. Maybin's

3

Questionnaire, submitted while he was proceeding pro se, explicitly mentions a "hostile environment," in which he "personally feared for [his] job, lost 12 pounds, [had] severe heartburn and went to the doctor for neck [and] back aches." Maybin Decl., Ex. 1 at 4 (Pre-Complaint Questionnaire), Dkt. No. 38-1. He also describes "a new manager who began treating me in a very hostile and toxic manner." *Id*. Presented with the Questionnaire for the first time in opposition to its Motion, Hilton contends that Maybin may not avail himself of the exception established by the Ninth Circuit in *B.K.B. v. Maui Police Dep't*, 276 F.3d 1091, 1102 (9th Cir. 2002), allowing a plaintiff to present his or her pre-complaint questionnaire as evidence that a claim for relief was properly exhausted.

## STANDARD OF REVIEW

In order to establish subject matter jurisdiction over his Title VII claim, Plaintiff was required to exhaust his administrative remedies. *B.K.B.*, 276 F.3d at 1099. A court's subject matter jurisdiction may be challenged under Federal Rule of Civil Procedure 12(b)(1). The parties may also raise the issue of subject matter jurisdiction at any time under Rule 12(h)(3), *Augustine v. United States*, 704 F.2d 1074, 1075 n.3 (9th Cir. 1983), and a federal court must generally "satisfy itself of its jurisdiction over the subject matter before it considers the merits of a case," *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 583 (1999) (citing *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94–95 (1998)).

On a Rule 12(b)(1) motion to dismiss, "the district court is ordinarily free to hear evidence regarding jurisdiction and to rule on that issue prior to trial, resolving factual disputes where necessary." *Augustine*, 704 F.2d at 1077 (citing *Thornhill Publ'g Co. v. Gen. Tel. Corp.*, 594 F.2d 730, 733 (9th Cir. 1979)); *see also McCarthy v. United States*, 850 F.2d 558, 560 (9th Cir. 1988). Where the court considers evidence outside the pleadings for this purpose, "[n]o presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims." *Augustine*, 704 F.2d at 1077 (citing *Thornhill*, 594 F.2d at 733). Nevertheless, "where the jurisdictional issue and substantive issues are so intertwined that the question of jurisdiction is dependent on the resolution of factual issues going to the merits, the jurisdictional determination should await a determination of the relevant facts on either a motion going to the merits or at trial." *Augustine*, 704 F.2d at 1077 (citing *Thornhill*, 594 F.2d at 733–35; Wright & Miller, Fed. Prac. & Proc. § 1350, at 558)).

## **DISCUSSION**

The parties agree that the Charge is silent with respect to the hostile work environment claim alleged in Count II of the Complaint. Hilton maintains that the Court may not look to the Pre-Complaint Questionnaire where the Charge is deficient because Maybin has not offered competent proof of agency negligence,

5

which it argues is required by *B.K.B.* The Court disagrees. Under the circumstances here, the Court may consider the allegations contained in Maybin's Pre-Complaint Questionnaire to determine whether he exhausted the hostile work environment claim that was omitted when the agency prepared his Charge. Because Maybin's Count II hostile work environment claim is contained in the Questionnaire, but omitted from the Charge without explanation by the agency, the Court finds the claim exhausted and denies Hilton's Motion.

**I.      Legal Framework for Exhaustion of Title VII Claims**

Title VII requires a plaintiff to exhaust his or her administrative remedies before filing a civil action against an employer. The scope of a plaintiff's Title VII action depends "'upon the scope of both the EEOC charge and the EEOC investigation.'" *B.K.B. v. Maui Police Dep't*, 276 F.3d 1091, 1100–01 (9th Cir. 2002), as amended (Feb. 20, 2002) (quoting *Sosa v. Hiraoka*, 920 F.2d 1451, 1456 (9th Cir. 1990)). By fulfilling these exhaustion requirements, the Title VII plaintiff "afford[s] the agency an opportunity to investigate the charge." *Id*. at 1099 (citing 42 U.S.C. § 2000e–5(b)). The purpose of this administrative charge requirement is twofold—"giving the charged party notice of the claim and 'narrowing the issues for prompt adjudication and decision.'" *B.K.B.*, 276 F.3d at 1099 (brackets omitted) (quoting *Park v. Howard Univ.*, 71 F.3d 904, 907 (D.C. Cir. 1995)) (additional citations omitted).

*B.K.B.* further explains that "subject matter jurisdiction extends over all allegations of discrimination that either fell within the scope of the EEOC's actual investigation or an EEOC investigation which can reasonably be expected to grow out of the charge of discrimination." *Id.; see also Sosa*, 920 F.2d at 1456 ("The jurisdictional scope of a Title VII claimant's court action depends upon the scope of both the EEOC charge and the EEOC investigation.").

In *B.K.B.*, the Ninth Circuit looked beyond the charge to the pre-complaint questionnaire filed with the HCRC and determined that plaintiff had, in fact, intended to pursue sexual harassment claims in addition to her race claims, and that the agency had notice of her intent. Under those conditions, the Ninth Circuit held that "[i]f the charge itself is deficient in recording her theory of the case due to the negligence of an agency representative who completes the charge form, then the plaintiff may present her pre-complaint questionnaire as evidence that her claim for relief was properly exhausted." *Id.* at 1102. The *B.K.B.* court noted the possible consequences of its holding in light of the dual purpose of the administrative charge, acknowledging that:

> because the charge is intended to satisfy the dual purpose of establishing notice of the complainant's claims both to the agency and to the named respondent, review of a plaintiff's pre-complaint questionnaire in order to determine the scope of the charge may impair part of its statutory purpose. Only the charge is sent to the respondent; the questionnaire is not. However, we do not take the respondent's notice of the charge

itself to be of paramount consideration where the failure of notification is due to agency negligence.

*Id*. at 1101–02.

The *B.K.B.* court did not find it determinative, as a matter of law or fact, that the agency itself admitted to negligence in preparing the charge. In that case, the HCRC staff submitted a declaration regarding its role in preparing the charge. Notably, there was no explicit finding by the Ninth Circuit of negligence on the part of the HCRC or its staff:

> Although no explicit admission of agency negligence has been provided in the record, Sakamoto's declaration suggests that any deficiency in the charge regarding the sparseness of its factual allegations should be attributed to the agency itself rather than to Plaintiff, since the agency itself was on notice of Plaintiff's intent to pursue claims of sexual harassment and intended to provide her with an opportunity to do so. It is clear that someone at the agency typed the factual allegations in the charge on Plaintiff's behalf, and we cannot agree that if that person was negligent in indicating the full scope of Plaintiff's allegations that the plaintiff herself should suffer due to that clerical error.

*Id*. at 1102–03.

Following *B.K.B.*, courts in this Circuit adhere to the rule that it may be permissible to look beyond the four corners of the charge when determining the scope of a plaintiff's claims and whether an EEOC investigation can "reasonably be expected to grow out of the charge," even without an express admission or finding of negligence on the part of agency staff who prepared the charge. For example, in *Oliva v. Cty. of Santa Clara*, No. 5:13–CV–02927–EJD, 2014 WL 3615741 (N.D.

8

Cal. July 22, 2014), the district court relied upon the framework established in *B.K.B.* in order to consider the statements in a pre-complaint questionnaire as evidence that the plaintiff's claim was properly exhausted, reasoning as follows:

> Reasonably and liberally interpreted, Plaintiff's pre-complaint questionnaire indicates that she intended her right to sue letter to encompass her age, racial and gender discrimination claims. Although no explicit admission of agency negligence has been provided, nor does this court impart any negligence onto the agency, the evidence in the record does suggest that any deficiency in the charge regarding the absence of discrimination based on "sex" should be attributed to the agency itself rather than to Plaintiff. The agency was on notice of Plaintiff's intent to pursue claims of gender discrimination because the evidence in the record clearly shows her pre-complaint form had the appropriate boxes checked. Plaintiff should not suffer prejudice in litigation due to an error caused by the agency.

*Oliva*, 2014 WL 3615741, at *6.[2] *See also Baird v. Office Depot*, No. C-12-6316 EMC, 2014 WL 2527114, at *5–6 (N.D. Cal. June 4, 2014) (considering, over

---

[2] The district court in *Oliva* also noted similar out-of-Circuit decisions in agreement with its framework. *See Oliva*, 2014 WL 3615741, at *6 (citing *Sickinger v. Mega Systems, Inc.*, 951 F. Supp. 153, 157–58 (N.D. Ind. 1996) (holding that plaintiff could rely upon allegations made in her pre-complaint questionnaire for purposes of exhaustion where EEOC representative who typed the charge failed to include allegations of wrongful retaliation that were clearly presented on the questionnaire); and *Cheek v. W. & S. Life Ins., Co.*, 31 F.3d 497, 502 (7th Cir. 1994) (determining that "[a]llegations outside the body of the charge may be considered when it is clear that the charging party intended the agency to investigate the allegations.")). Indeed, the other Circuits are in accord with the holding in *B.K.B.* and permit the court to look beyond the face of the agency charge to determine whether a plaintiff has exhausted administrative remedies. *See, e.g.*, *Flores v. Bd. of Trustees of Cmty. Coll. Dist. No. 508*, 103 F. Supp. 3d 943, 950 (N.D. Ill. 2015) ("Courts in this Circuit look beyond the 'four corners of the EEOC charge form' when 'it is clear that the charging party intended the agency to investigate the allegations.'") (quoting *Vela v. Vill. of Sauk Vill.*, 218 F.3d 661, 664 (7th Cir. 2000)); *see also Swearnigen–El v. Cook Cty. Sheriff's Dep't*, 602 F.3d 852, 865 (7th Cir. 2010) (examining plaintiff's intake questionnaire to determine scope of charge); *Cheek*, 31 F.3d at 502 (considering plaintiff's sworn affidavit and 16–page handwritten

defendant's objection, "Plaintiff's allegations contained in the EEOC intake questionnaire [that] remove any doubt that Plaintiff has exhausted his failure to accommodate and failure to engage administrative claims prior to filing a civil suit. . . . If the Court were to hold the Charge alone deficient, Plaintiff could demonstrate a *prima facie* case of agency negligence given that the details of the . . . failure to accommodate incident were included by Plaintiff in his Intake but omitted from the Charge prepared by the EEOC.").

In view of this framework, the Court turns to the merits of Hilton's claim that Maybin failed to exhaust his Count II hostile work environment claim.

## II. Maybin Exhausted His Count II Hostile Work Environment Claim

Hilton maintains that Maybin did not exhaust his hostile work environment cause of action because that claim exceeds the scope of the Charge, and the Court is therefore without subject matter jurisdiction over Count II. Maybin does not

---

letter to determine scope of EEOC charge); *Hale v. Bd. of Trustees of S. Illinois Univ. Sch. of Med.*, 219 F. Supp. 3d 860, 866 (C.D. Ill. 2016) ("Because the charge of discrimination and the investigation report were attached to the Complaint, this Court will consider both documents to determine what claims were communicated to the Department and Defendant during the investigation."); *McClain v. Lufkin Indus., Inc.*, 519 F.3d 264, 273 (5th Cir. 2008) (explaining use of "a 'fact-intensive analysis' of the administrative charge that looks beyond the four corners of the document to its substance," and considering a pre-Charge letter written by complainant to EEOC); *Arich v. Dolan Co.*, No. 3:11-CV-538-CWR-LRA, 2012 WL 2025202, at *5 (S.D. Miss. June 5, 2012) (A court can confirm its interpretation of the plaintiff's charge of discrimination by looking to "the actual scope of the EEOC's investigation, which is clearly pertinent to an exhaustion inquiry.").

dispute that the Charge nowhere mentions his hostile work environment claim.[3]

Instead, he relies solely on his Pre-Complaint Questionnaire and statements he made to the EEOC investigator who prepared the Charge. *See* Mem. in Opp'n at 4, Dkt. No. 38 ("Plaintiff's position is that he did indicate in his Pre-Complaint Questionnaire, dated August 2, 2016, that he had been subjected to a hostile work environment."). According to Maybin, he completed the Questionnaire, sent it to Mr. Kaopuiki of the EEOC, and "discussed the hostile work environment with Mr. Kaopuiki which is referenced in Count II of my Complaint filed in this Court."

---

[3]The narrative portion of the EEOC Charge states:

    I.    I was hired by Respondent on August 16, 2014, as a Sales Agent Representative. Throughout my employment, I have never received any disciplinary counseling and only received one performance warning in March 2016. Since I was hired, I was consistently among the top third of Sales Agents in the company till Respondent changed sales performance standards in May 2016. I was placed on "training" in June and July 2016 by Josh Kannel (30s) which restricted me to one tour per day. The limited tours ultimately resulted in my termination from Respondent. Incidentally, others outside my protected category were treated more favorably by being retained and promoted even though they failed as Sales Agents for Respondent. Kannel selectively retained James Wilson (30s), Aaron Silbirger (30s) and Drew 'Last Name Unknown' (30s).

    II.    Respondent did not provide a reason for discriminatory termination on August 29, 2016.

    III.    I believe I have been discriminated against because of my age (56) in violation of the Age Discrimination In Employment Act of 1967, as amended. I further believe that others as a class have been discriminated against because of their age (over 50) in violation of the Age Discrimination in Employment Act of 1967, as amended. I also believe I have been retaliated against in violation of the Age Discrimination In Employment Act of 1967, as amended.

Dkt. No. 32-1.

Maybin Decl. ¶¶ 3, 7. Maybin avers: "Mr. Kaopuiki prepared the Charge of Discrimination which I signed as he had prepared it after I disclosed to him the facts about the hostile work environment due to age discrimination." Maybin Decl. ¶ 8.

Hilton objects to the Court's consideration of Maybin's Questionnaire in the absence of admissible proof of agency negligence. *See* Reply at 9 n.5, Dkt. No. 39 ("Here, unlike *B.K.B.*, there is no declaration attributing the disparity between the Charge and the civil complaint to the negligence of the EEOC."). The Court, however, does not read *B.K.B.* in the narrow manner advanced by Hilton. That is, for purposes of this Motion, Maybin need not conclusively "*demonstrate* that the agency was negligent," as Hilton urges, in order to offer his pre-complaint questionnaire. Reply at 8, Dkt. No. 39. To the contrary, *B.K.B.* itself did not make an express determination of negligence nor did the HCRC admit to negligence in preparing the charge omitting theories of liability that the plaintiff there had advanced in her questionnaire. *See B.K.B.*, 276 F.3d at 1102–03. Instead, the Ninth Circuit simply found that as between the agency and the plaintiff, "someone at the agency typed the factual allegations in the charge on Plaintiff's behalf, and we cannot agree that *if* that person was negligent in indicating the full scope of Plaintiff's allegations that the plaintiff herself should suffer due to that clerical error." *Id*. (emphasis added).

Likewise here, Maybin's Questionnaire indicates that he was complaining about the "hostile environment" and "ridicule" that he experienced from his first weeks on the job, and which continued upon assignment of "a new manager who began treating [him] in a very hostile and toxic manner" due to his age. Questionnaire at 3–4. Maybin, like the plaintiffs in *B.K.B.*, *Oliva*, and *Baird*, did not himself prepare the deficient EEOC Charge that he signed, which omits any reference to the hostile work environment allegations included in his Questionnaire and that comprise Count II of his Complaint.

"Although no explicit admission of agency negligence has been provided," *Oliva*, 2014 WL 3615741, at *6, the contents of Maybin's Declaration and Questionnaire suggest that any deficiency in the Charge, notably the absence of any mention of a hostile work environment, "should be attributed to the agency itself rather than to Plaintiff." *Id.* "The agency was on notice of Plaintiff's intent to pursue claims of [a hostile work environment due to age] because the evidence in the record clearly shows [Maybin's] pre-complaint form had [such allegations]." *Oliva*, 2014 WL 3615741, at *6. *See also Baird*, 2014 WL 2527114, at *5–6 ("Plaintiff's allegations contained in the EEOC intake questionnaire ('Intake') remove any doubt that Plaintiff has exhausted his failure to accommodate and failure to engage administrative claims prior to filing a civil suit. . . . If the Court were to hold the Charge alone deficient, Plaintiff could demonstrate a *prima facie* case of

agency negligence given that the details of the September 22, 2011 failure to accommodate incident were included by Plaintiff in his Intake but omitted from the Charge prepared by the EEOC.  A plaintiff should not have to 'rely to her detriment on her charge if the EEOC has distorted her claims when transferring allegations from an intake questionnaire onto the charge form.'") (quoting *B.K.B.*, 276 F.3d at 1102).  Maybin's hostile work environment claim, as alleged in Count II, is therefore "consistent with his original theory of the case."  *B.K.B.*, 276 F.3d at 1100.[4]

## **CONCLUSION**

In light of (1) the information in Maybin's Questionnaire demonstrating that he intended to pursue a hostile work environment claim against Hilton, and (2) his averment that he discussed those claims with the EEOC investigator before the agency prepared the Charge, Maybin Decl. ¶ 7, the Court concludes for purposes of

---

[4]In determining whether Maybin has exhausted allegations that are not specified in his Charge, the Ninth Circuit explains that it is appropriate to consider such factors as:

> the alleged basis of the discrimination, dates of discriminatory acts specified within the charge, perpetrators of discrimination named in the charge, and any locations at which discrimination is alleged to have occurred.  In addition, the court should consider plaintiff's civil claims to be reasonably related to allegations in the charge to the extent that those claims are consistent with the plaintiff's original theory of the case.

*B.K.B.*, 276 F.3d 1091, 1100.

this Motion that Count II was properly exhausted.   Defendant's Motion To Dismiss Count II (Dkt. No. 34) is DENIED.

IT IS SO ORDERED.

DATED: June 12, 2018 at Honolulu, Hawaiʻi.



Derrick K. Watson
United States District Judge

---

*Maybin v. Hilton Grand Vacations Company, LLC*, CV. NO. 17-00489 DKW-KSC; **ORDER DENYING DEFENDANT'S MOTION TO DISMISS COUNT II**