IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAIʻI

| | |
|---|---|
| CARL MAYBIN,<br><br>        Plaintiff,<br><br>    vs.<br><br>HILTON GRAND VACATIONS<br>COMPANY, LLC,<br><br>        Defendant. | CIVIL NO. 17-00489 DKW-KSC<br><br><br>**ORDER GRANTING<br>DEFENDANT'S RENEWED<br>MOTION FOR SUMMARY<br>JUDGMENT** |

## <u>INTRODUCTION</u>

Hilton seeks summary judgment on Maybin's claim that he was unlawfully terminated from his timeshare sales position due to his age in violation of the Age Discrimination in Employment Act ("ADEA"), U.S.C. §§ 621 *et seq*. The focus of Hilton's renewed Motion is whether it sufficiently established that the same actor made the decision to both hire and terminate Maybin, and, if so, whether Maybin met his increased burden of demonstrating age-based discrimination in light of the application of the "same actor" inference. Because the Court finds that the same actor inference applies to Maybin's discrimination claims, and that Maybin has not made the strong showing necessary to overcome the inference on the facts presented, Hilton's Renewed Motion for Summary Judgment as to Count I is GRANTED.

# BACKGROUND

Because the parties are familiar with the factual and procedural background in this matter, as described in prior Court orders, the Court recounts only those matters material to the issues raised by Hilton's renewed Motion as to Count I.[1]

## I.    Factual Background

Maybin was hired by Hilton as a timeshare sales agent in September 2015 when he was 55 years old, following a series of job interviews with Hilton personnel.   He first interviewed with Derek Kanoa, Vice President of Sales, and then with Julia Montenegro, a senior member of Hilton's Human Resources department.   1/11/18 Decl. of Carl Maybin ¶ 3, Dkt. No. 26-1.   Maybin then interviewed with Dave Colton, and finally, with Joshua Kannel, the Hawaii Director of Sales.   Maybin Decl. ¶¶ 3–4.   Based upon Kannel's recommendation and request, Montenegro hired Maybin on September 14, 2015.   12/8/17 Decl. of Joshua Kannel ¶ 7, Dkt. No. 21-1; 6/13/18 Montenegro Decl. ¶ 7, Dkt. No. 46-1.[2]

---

[1]*See* the Court's prior orders, *available at* 2018 WL 2944149 (D. Haw. June 12, 2018), and 2018 WL 1177914 (D. Haw. Mar. 3, 2018).   *See also Bridge Aina Le'a, LLC v. Hawaii Land Use Comm'n*, No. CV 11-00414 SOM-KJM, 2018 WL 3149489, at *1 (D. Haw. June 27, 2018) (incorporating by reference the court's prior rulings when considering a renewed motion for judgment as a matter of law).

[2]Decisions regarding the hiring and firing of sales agents are centralized and restricted to personnel working in Hilton's Human Resources department for the Hawaii market ("Hilton HR").   12/8/17 Kannel Decl. ¶¶ 7–8; 1/25/18 Decl. of Julia Montenegro ¶ 15, Dkt. No. 29-1.   Only Julia Montenegro and John Boulanger, both employed by Hilton HR, had the authority to make hiring and firing decisions with respect to sales agents such as Maybin.   1/25/18 Montenegro Decl. ¶¶ 16–17.

When Maybin failed to meet sales quotas for several consecutive months, he was subject to progressive written warnings, and then eventually terminated by Montenegro, at Kannel's recommendation. 12/8/17 Kannel Decl. ¶¶ 19–20; 6/13/18 Montenegro Decl. ¶ 9.

According to Maybin, however, shortly after he was hired, Kannel demonstrated animus towards older sales agents by making negative comments about their abilities at sales meetings. For example, Kannel said older agents "were too slow, can't learn, have a different way of doing things, are hard to teach new ways of sales, are too old to change, and don't have the energy necessary for sales." Maybin Decl. ¶ 6. Kannel made such comments at sales meetings from the time that Maybin first started "and continued [making them] throughout [his] employment" with Hilton. Maybin Decl. ¶ 6. Although Hilton contends that Maybin was terminated because he was not performing his job adequately as measured by objective performance standards, Maybin asserts, without additional evidence, that from the inception of his employment until the beginning of February 2016, his sales were strong, and at times he "was number 2 or 3 in sales," compared to his peers. Maybin Decl. ¶ 7. From the end of February 2016, however, Maybin acknowledges that his sales numbers declined, and he attributes that decline, in part,

to being "given less tours," and intentionally assigned fewer potential customers. Maybin Decl. ¶¶ 8–9.[3]

In March 2016, Maybin was assigned a new sales manager, James Tony Wilson, who treated Maybin "in a very hostile manner" from their first interaction. Maybin, however, does not specifically attribute age-based animus to Wilson in his Complaint or Declaration filed in this matter. *See* Maybin Decl. ¶¶ 13–14. Wilson made inappropriate comments to Maybin, "interfer[ing] with [his] sales by making sarcastic remarks about [his] clients." Maybin Decl. ¶ 15. Maybin lost sales because Wilson "would refuse to meet with [his] customers after [Maybin] gave them a tour to talk to them about purchasing." Maybin Decl. ¶ 15.

Maybin received his first written job performance warning in May 2016 for failure to meet Hilton's job performance standards.[4] 12/8/17 Kannel Decl. ¶ 13;

---

[3]According to Maybin, Kannel was responsible for creating the daily "'roter' or list of sales people in the order that they would get tours." Maybin Decl. ¶ 10. Those employees listed near the top of the "roter" were assigned a greater number of tours, according to Maybin, "usually 2 or 3 per day, [however,] [i]f you were at the bottom of the list, you would get none, or 1 to 2 tours per day." Maybin Decl. ¶ 11. In Maybin's version of events, he was "intentionally given less tours, even though he was a high producer of sales. Being given less tours resulted in less sales, [because] [i]f you don't get customers for tours, you get less sales." Maybin Decl. ¶ 9. From the end of February 2016, Maybin claims that he "was placed toward the bottom of the 'roter', even though [his] sales performance had been good, and [he] was meeting quotas." Maybin Decl. ¶ 12.
[4]Hilton assesses sales agents and executives' performance under its "Minimum Performance Standards" system ("MPS"), which operates in the following manner:

> Under the MPS, during the first three months of employment, Sales Executives were required to complete a total of five sales within that three month period.

Ex. 2 (6/25/16 Performance Management Review Document), Dkt. No. 21-3. The

consequences of failure to meet minimum performance guidelines after the

three-month introductory period are as follows:

> Starting in the fourth month of a Sales Executive's employment[,] if a Sales Executive fails to meet the required MPS, they were subject to a system of progressive written warning documenting their lack of performance and failure to satisfy the MPS ("Job Performance Warning System").

> Under the Job Performance Warning System[,] the progression is as follows: (1) written warning, (2) a second/final written warning, and (3) termination.

12/8/17 Kannel Decl. ¶ 12(a)–(b) (citing Ex. 1).

According to Hilton, during the final four months of his employment, Maybin

did not meet any of its performance standards. That is, he failed to have a VPG of

at least $2,200 on the basis of current sales or an average of the prior three months of

---

Under the MPS, during the second three months of employment, Sales Executives were required to complete a total of seven sales within that second three month period.

Once a Sales Executive had passed the first six months of employment, their MPS requirements changed from being based on the number of sales made to a "Value Per Guest" ("VPG") basis.

Under the MPS, after six months of employment, Sales Executives were required to meet a monthly VPG minimum of $2,200 in at least one of the three following categories: (1) current month, (2) an average of the prior three month period, or (3) an average of the prior twelve month period.

12/8/17 Kannel Decl. ¶ 8(b)–(e) (citing Ex. 1).

sales.[5]   Maybin received a second and final written warning when he did not meet

his VPG for June 2016.   12/8/17 Kannel Decl. ¶ 15; Ex. 3 (7/26/16 Performance

Management Review Document), Dkt. No. 21-4.

Maybin acknowledges that during April, May, and June of 2016, he did not

meet sales quotas, but says that he "was intentionally given less tours which kept

[his] sales numbers down and [his] sales manager was refusing to meet [with his]

customers."   Maybin Decl. ¶ 17.   Hilton maintains that Maybin always received at

least 15 tours per month—even after February 2016—and that "[o]nly 15 tours are

required each month for a sales executive to meet his sales quotas."   1/25/18 Decl.

of Julia Montenegro ¶ 5, Dkt. No. 29-1.   According to Hilton HR's Montenegro, in

May 2016, Maybin was not required to attend any training and had 19 tours.

---

[5]During April, May, June, and July 2016, Maybin performed as follows:

| VPG Month | Plaintiff's Sales | Plaintiff's VPG Current Month | Plaintiff's VPG 3 Month Avg. |
|---|---|---|---|
| Month 7 (April 2016) | $1,202 | $943 | $943 |
| Month 8 (May 2016) | $1,247 | $1,809 | $1,291 |
| Month 9 (June 2016) | $1,161 | $401 | $952 |
| Month 10 (July 2016) | $0.00 | $0.00 | $648 |

12/8/17 Kannel Decl. ¶ 11.   While Hilton's policy also permits an employee to satisfy VPG
performance criteria by averaging sales figures for the "prior twelve month period," that was not
possible with Maybin because he was not employed for at least twelve months.   12/8/17 Kannel
Decl. ¶ 8 (citing Ex. 1).

1/25/18 Montenegro Decl. ¶ 9.   After he received his first written warning, he was

"placed into remedial training for *June 2016*," and that month, his tours increased

from 19 to 29.   1/25/18 Montenegro Decl. ¶¶ 9–10.   In July, Maybin received 23

tours and "was given an extra month of remedial training."   Montenegro Decl. ¶ 13.

According to Maybin, in July 2016, he was ordered to attend mandatory

training at the Pan Am Building on Kapiolani Boulevard.   Maybin Decl. ¶ 18.   As

a result of the required training, Maybin claims to have only received one tour per

day at 8:00 a.m., and had no sales in July 2016.   According to Maybin, he "could

not possibly have met quota because he was in mandatory training."   Maybin Decl.

¶ 18.   When Maybin did not meet his VPG in July 2016, he was terminated the

following month.   12/8/17 Kannel Decl. ¶¶ 17–18; Ex. 4 (8/23/16 Performance

Management Review Document), Dkt. No. 21-5; Ex. 5 (8/29/16 Personnel

Authorization Form), Dkt. No. 21-6.

Kannel avers that he recommended termination to Hilton HR solely due to

Maybin's sales performance and that "Maybin's age had no part in [his] decision to

recommend Mr. Maybin's termination."   12/8/17 Kannel Decl. ¶ 20.   Montenegro,

the ultimate decisionmaker, likewise avers that "age had no part in [her] decision to

terminate Mr. Maybin."   1/25/18 Montenegro Decl. ¶ 22; *see also* 6/13/18

Montenegro Decl. ¶ 10 ("Mr. Maybin's age played no part in my decision to either

hire or fire Mr. Maybin.").    Maybin disagrees, and contends instead that he was

wrongfully terminated in August 2016 due to age discrimination.

## II.    Procedural Background

On September 27, 2017, Maybin filed his Complaint alleging three counts

under the ADEA: (1) age discrimination; (2) hostile work environment; and

(3) retaliation.[6]    Compl. ¶¶ 18–28, Dkt. No. 1.    The Court previously denied

Hilton's request for summary judgment on Count I, finding that genuine issues of

material fact persisted with respect to pretext.    Of particular note to the instant

Motion, the Court determined that Hilton had not established, for purposes of

invoking the "same actor inference," that the same person with decision-making

authority was responsible for both hiring and firing Maybin.    The prior summary

judgment record was insufficient because, at that time—

> Hilton argue[d] that Kannel is "the same manager who allegedly
> discriminated against Plaintiff by firing him, [and also]
> interviewed Plaintiff and approved his hiring in the first
> instance."    Mem. in Supp. at 16, Dkt. No. 20-1.    Maybin
> contend[ed] that he interviewed with several Hilton managers
> before he was hired, including Montenegro, notwithstanding
> Kannel's assertion that it was his recommendation that led to
> Maybin's hiring.    [However,] Kannel did not have the
> independent authority to hire or fire Maybin—he could only
> recommend as much—because that power resided solely with
> Montenegro and Boulanger in Hilton HR.

---

[6]On November 21, 2017, the parties stipulated to the dismissal with prejudice of Maybin's Count
III retaliation claim.    Dkt. No. 17

*Maybin v. Hilton Grand Vacations Co., LLC*, No. CV 17-00489 DKW-KSC, 2018 WL 1177914, at *7 (D. Haw. Mar. 6, 2018). The Court thus denied Hilton's motion, noting that "whether the same actors were responsible for Maybin's hiring and the events leading to his termination is not beyond dispute on this factual record." *Id.* The Court noted, however, that "[i]f Hilton subsequently demonstrates that the same actor was responsible for both Maybin's hiring and termination, Maybin may only prevail if he makes the 'extraordinarily strong showing of discrimination' required to rebut the 'same actor' inference." *Id.* at 8 (citing *Coghlan v. Am. Seafoods Co. LLC*, 413 F.3d 1090, 1097 (9th Cir. 2005)).

Hilton now renews its request for summary judgment, based upon the application of the same actor inference, on Count I's claim for age discrimination under the ADEA. In support of its Motion, Hilton offers a supplemental Declaration of Julia Montenegro, averring that all "[d]ecisions regarding hiring and firing of employees working for Hilton in Hawaii are centralized and restricted to personnel working in Hilton HR. Decisions regarding hiring and firing employees in [Maybin's] capacity (*i.e.*, as real estate salespersons) were the responsibility of myself and my colleague, John Boulanger." 6/13/18 Montenegro Decl. ¶¶ 4–5. In light of the updated record, the Court again considers Hilton's request for summary judgment on Maybin's ADEA discrimination claim, limited in scope to whether the parties have met their respective burdens to establish (1) the applicability of the

same actor inference, and (2) the requisite strong showing of discrimination necessary to rebut the inference.

## STANDARD OF REVIEW

Pursuant to Federal Rule of Civil Procedure 56(a), a party is entitled to summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."   The moving party is entitled to judgment as a matter of law when the nonmoving party fails to make a sufficient showing on an essential element of a claim in the case on which the nonmoving party has the burden of proof.   *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

## DISCUSSION

The parties agree, for purposes of this Motion, that Maybin has made a *prima facie* case of age discrimination.   Because Hilton has sufficiently established that Montenegro, at Kannel's recommendation, was the same decisionmaker who hired and fired Maybin within a short period of time, the same actor inference creates an inference of no age-based animus or discriminatory motive.   Moreover, Hilton offers a non-discriminatory reason for the termination, with Maybin acknowledging that his monthly sales numbers fell below Hilton's minimum requirements during the relevant time period.   Maybin, however, argues that the cited reason is

pretextual, and attributes his sales shortages to being deliberately set-up for failure and points to the age-related comments of Kannel.

Because the same actor inference applies, and the limited evidence cited by Maybin does not amount to the "strong case of bias necessary to overcome this inference," *Coghlan*, 413 F.3d at 1098, Hilton is entitled to summary judgment on Count I.

## I.  Legal Framework: Age Discrimination and the Same Actor Inference

The federal ADEA prohibits discrimination based on age.   29 U.S.C. § 623(a)(1) ("It shall be unlawful for an employer to . . . discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age").   The prohibition is "limited to individuals who are at least 40 years of age."   29 U.S.C. § 631(a).

Motions for summary judgment regarding ADEA claims may be analyzed using the burden-shifting framework in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).   *Shelley v. Geren*, 666 F.3d 599, 608 (9th Cir. 2012) (holding that the *McDonnell Douglas* burden-shifting framework applies to summary judgment motions under the ADEA).   For the first step in the burden-shifting framework, a plaintiff must present evidence of a prima facie case of discrimination by showing that (1) he belongs to a protected class, (2) he was qualified for his position, (3) he was subjected to an adverse employment action, and (4) similarly situated

individuals outside his protected class were treated more favorably. *Davis v. Team Elec. Co.*, 520 F.3d 1080, 1089 (9th Cir. 2008).

If the plaintiff establishes a prima facie case, "the burden of production, but not persuasion, then shifts to the employer to articulate some legitimate, nondiscriminatory reason for the challenged action." *Hawn v. Executive Jet Management, Inc.*, 615 F.3d 1151, 1155 (9th Cir. 2010). If the movant meets this burden, a plaintiff must raise "a triable issue of material fact" as to whether defendant's proffered reasons for the adverse employment actions are "mere pretext for unlawful discrimination." *Hawn*, 615 F.3d at 1155. "[A] plaintiff's burden is much less at the prima facie stage than at the pretext stage." *Hawn*, 615 F.3d at 1158.

"A plaintiff can show pretext directly, by showing that discrimination more likely motivated the employer, or indirectly, by showing that the employer's explanation is unworthy of credence." *Vasquez v. Cty. of Los Angeles*, 349 F.3d 634, 641 (9th Cir. 2003).[7] Hilton argues that because Montenegro was the person

---

[7]Direct evidence is usually composed of "clearly sexist, racist, or similarly discriminatory statements or actions by the employer." *Coghlan v. Am. Seafoods Co.*, 413 F.3d 1090, 1094–95 (9th Cir. 2005); *Earl v. Nielsen Media Research, Inc.*, 658 F.3d 1108, 1113 (9th Cir. 2011) (holding that "comments from supervisors betraying bias or animus against older workers" constitute direct evidence of age discrimination). In contrast, circumstantial evidence constitutes "evidence that requires an additional inferential step to demonstrate discrimination." *Id*. at 1095. A plaintiff's circumstantial evidence must be both specific and substantial in order to survive summary judgment. *Becerril v. Pima Cty. Assessor's Office*, 587 F.3d 1162, 1163 (9th Cir. 2009).

responsible for both Maybin's hiring and firing, the same actor inference prevents

Maybin from establishing pretext under the circumstances of this case.

In discrimination cases, when "the same actor is responsible for both the

hiring and the firing of a discrimination plaintiff, and both actions occur within a

short period of time, a strong inference arises that there was no discriminatory

action." *Coghlan*, 413 F.3d at 1096 (quoting *Bradley v. Harcourt, Brace & Co.*,

104 F.3d 267 (9th Cir. 1996)). The Court is required to consider this "strong

inference" in a summary judgment motion. *Id.*; *see also Schechner v. KPIX–TV*,

686 F.3d 1018, 1026 (9th Cir. 2012) (the "same-actor inference is a strong inference

that a court must take into account on a summary judgment motion") (internal

quotation marks omitted). If the inference applies, then Maybin must present a

"strong case of bias necessary to overcome this inference." *Coghlan*, 413 F.3d at

1098. In effect, the same actor inference "amplifies the plaintiff's burden at the

pretext stage." *Qualls v. Regents of the Univ. of California*, No.

---

Alternatively, a member of a protected class suffering an adverse employment action may rely solely on "direct evidence," rather than the burden-shifting framework. "Direct evidence, in the context of an ADEA claim, is defined as evidence of conduct or statements by persons involved in the decision-making process that may be viewed as directly reflecting the alleged discriminatory attitude . . . sufficient to permit the *fact finder* to infer that that attitude was more likely than not [the cause of] the employer's decision." *Enlow v. Salem–Keizer Yellow Cab Co., Inc.*, 389 F.3d 802, 812 (9th Cir. 2004) (citation omitted) (emphasis in original). Direct evidence often takes the form of slurs made by the employer against members of the protected category. *See, e.g., Earl*, 658 F.3d at 1113 (noting that "comments from supervisors betraying bias or animus against older workers" constitute direct evidence of age discrimination); *Mustafa v. Clark Cty. Sch. Dist.*, 157 F.3d 1169, 1180 (9th Cir. 1998) ("Discriminatory remarks are relevant evidence that, along with other evidence, can create a strong inference of intentional discrimination.").

1:13-CV-00649-LJO-SMS, 2015 WL 6951757, at *4 (E.D. Cal. Nov. 10, 2015) (citing *Coghlan*, 413 F.3d at 1096) (plaintiff's burden was "especially steep in this case because of the [same actor inference]"). The inference may "arise when the favorable action and termination are as much as a few years apart." *Schechner*, 686 F.3d at 1026; *see also Coghlan*, 413 F.3d at 1097 (applying same-actor inference when three years lapsed between hiring and adverse employment action).

Ultimately, plaintiffs "retain[ ] the burden of persuasion to establish that age was the 'but-for' cause of the employer's adverse action." *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 180 (2009). In other words, plaintiffs must do more than "produce some evidence that age was one motivating factor in [an employment] decision." *Id.* A plaintiff must show, at the summary judgment stage, that a reasonable trier of fact could conclude, by a preponderance of the evidence, that the plaintiff would not have been fired but for impermissible age discrimination. *See, e.g.*, *Scheitlin v. Freescale Semiconductor, Inc.*, 465 Fed. Appx. 698, 699 (9th Cir. 2012) (applying *Gross*'s "but for" causation standard at the summary judgment stage).

## II. Hilton Is Entitled to Summary Judgment on Count I

### A. The Same Actor Inference Applies Under the Circumstances Here

The summary judgment record establishes that Montenegro and her colleague John Boulanger are the decisionmakers with hiring and firing authority for sales

agents, and that such responsibility is centralized in Hilton HR. 1/25/18 Montenegro Decl. ¶¶ 15–17; 6/13/18 Montenegro Decl. ¶¶ 4–5. The record is also undisputed that Montenegro's decisions to both hire and to eventually terminate Maybin tracked Kannel's recommendations.[8] 12/8/17 Decl. of Joshua Kannel ¶ 7; 6/13/18 Montenegro Decl. ¶¶ 7, 9. Although Maybin posits that Montenegro's role at Hilton HR was merely to "process paperwork to effectuate the hiring and firing decisions of Kannel," Mem. in Opp'n at 4, Dkt. No. 57, the record is to the contrary.[9] Maybin acknowledges that he interviewed with Montenegro, among others, for the sales agent position before he was hired, and moreover, that he does "not know who made the decision to hire [him]." 1/11/18 Maybin Decl. ¶¶ 3, 5, Dkt. No. 26-1.

---

[8]Although Maybin asserts that Montenegro and/or Kannel have made inconsistent statements during the course of this case and several other matters with respect to hiring and firing authority at Hilton, the Court is unable to discern any material distinctions in their testimonies or in the positions taken by Hilton in these matters. To the contrary, each consistently states that Kannel recommended or requested that a course of action be taken, and correspondingly, Montenegro or Boulanger had the ultimate authority to make the decision to hire or fire sales agents at Hilton, including those based on Kannel's recommendation. *Compare* Mem. in Opp'n at 4–6, Dkt. No. 57 *with* Reply at 12–16, Dkt. No. 59. Put another way, none of Kannel's or Montenegro's declarations is inconsistent with any other in this case or in any other matter cited by Maybin.
[9]Maybin argues, for instance, that Montenegro did not make the actual decision to hire or fire him, and simply processed the paperwork to carry out the hiring and firing decisions made by Kannel. Maybin, however, is unable to offer admissible evidence to support his latest assertions. To the extent he relies upon the declaration of Ruby Richardson, another Hilton sales agent, he does not establish that she has personal knowledge of Hilton's Human Resources practices or even which employees have independent hiring and firing authority. *See* Fed. R. Civ. P. 56(c)(4). In any event, whether the Court were to consider the relevant decisionmaker to be Montenegro (as Hilton advances), or Kannel (as Maybin asserts), the outcome would be unchanged—the same decisionmaker was responsible for both Maybin's hiring and his termination within a short time period, and the same actor inference would apply.

The Court previously declined to apply the same actor inference when considering Hilton's first motion for summary judgment because Hilton had yet to establish that the same decisionmaker was responsible for Maybin's hiring and termination.[10]   Having supplemented the evidentiary record, Hilton now sufficiently establishes that Montenegro was the same decisionmaker—with independent hiring and firing authority—who interviewed Maybin, and both accepted Kannel's recommendation to hire him in September 2015 and to then terminate him in August 2016.   Under these facts, the same actor inference applies. Montenegro, at Kannel's request and recommendation, was responsible for hiring Maybin as a sales agent.   Less than one year later, Montenegro, again at Kannel's recommendation, terminated Maybin.   *See Coghlan*, 413 F.3d at 1097 (holding that same actor inference applied when time period of one year separated employer's favorable action and a subsequent adverse action); *Coleman v. Quaker Oats Co.*, 232 F.3d 1271, 1286 (9th Cir. 2000) (applying the same actor inference where the time span between favorable and alleged discriminatory actions was one year); *Day v. Sears Holding Corp.*, 930 F. Supp. 2d 1146, 1161 (C.D. Cal. 2013) ("A period of a

---

[10]Notably, Hilton did not previously present Montenegro's statements that she hired and terminated Maybin.   The Court explained that because Kannel did not appear to have the independent authority to hire or fire Maybin—he could only recommend as much—Hilton failed to demonstrate that the same actor inference was properly applicable.   *See Russell v. Mountain Park Health Ctr. Properties, LLC*, 403 Fed. Appx. 195, 196 (9th Cir. 2010) (a defendant must demonstrate that "the individuals responsible for . . . termination were actually responsible for his hiring, rather than simply participants in that process, [to be] entitled for purposes of summary judgment to the 'same-actor' inference of non-discrimination.").

year and a half qualifies as a 'short period of time.'") (citation omitted).   Therefore,

Maybin must present an "extraordinarily strong showing of discrimination" to

overcome the inference.   *Coghlan*, 413 F.3d at 1097; *see also Stout v. Yakima*

*HMA, Inc.*, No. 10-CV-3080-TOR, 2013 WL 587569, at *8 (E.D. Wash. Feb. 14,

2013) ("The same actor inference is strong and can only be defeated by an

'extraordinarily strong showing of discrimination.'") (quoting *Coghlan*, 413 F.3d at

1097).

### B.  Maybin Fails to Make the Strong Showing of Age Discrimination Necessary to Overcome the Same Actor Inference

Hilton maintains that Maybin was terminated following progressive written

warnings consistent with company policy.   Having offered a non-discriminatory

reason for the adverse employment action, Maybin must show a triable issue of

material fact as to whether Hilton's stated reason is mere pretext for unlawful

discrimination.[11]   "This burden is difficult to meet in cases where the same actor

was responsible for both a plaintiff's promotion and subsequent adverse

employment action."   *Crudder v. Peoria Unified Sch. Dist. No. 11*, 468 F. App'x

781, 783 (9th Cir. 2012).   Maybin concedes that he did not meet his sales quotas

---

[11] *See Jackson v. Post Univ., Inc.*, 836 F. Supp. 2d 65, 93 (D. Conn. 2011) ("Because defendant has proffered a nondiscriminatory reason for plaintiff's discharge, bolstered by the presumption of the 'same actor' doctrine, the burden returns finally to plaintiff to show that defendant's stated reason for his discharge was pretextual in that his termination was directly related to his [protected class.]").

and monthly VPG in April, May, and June of 2016, but argues that he was intentionally hindered from adequately performing his job due to conduct by his supervisors, including Kannel, whom he alleges exhibited age-based animus against him and other older sales agents. Yet, Montenegro's (and Kannel's) "initial willingness to hire [Maybin] is strong evidence that the employer is not biased against the protected class to which the employee belongs." *Coghlan*, 413 F.3d at 1096. Maybin has not offered sufficient evidence capable of overcoming this inference.

The statements attributed to Kannel and offered to show age-based animus do not, without much more, satisfy the strong showing of discrimination necessary to overcome the same actor inference. For example, Kannel purportedly said "the older agents, including [Maybin], were too slow, can't learn, have a different way of doing things, are hard to teach new ways of sales, are too old to change, and don't have the energy necessary for sales." Maybin Decl. ¶ 6. Although perhaps insensitive, several of these statements do not explicitly reference age; rather, their intent and meaning must be circumstantially inferred. Nor do the comments that do appear to reference age evince an extraordinarily strong showing of bias based upon Maybin's age, especially because these comments are not linked directly to his termination. *See Nesbit v. Pepsico, Inc.*, 994 F.2d 703, 705 (9th Cir. 1993) (use of phrase "we don't necessarily like grey hair" did not create inference of

discriminatory motive where not tied to adverse employment decision); *Nidds v. Schindler Elevator Corp.*, 113 F.3d 912, 918–19 (9th Cir. 1996) (use of phrase "old timers" did not support inference of discriminatory motive); *Rose v. Wells Fargo & Co.*, 902 F.2d 1417, 1420–21 (9th Cir. 1990) (use of phrase "old-boy network" did not support inference of discriminatory motive); *see also Weichman v. Chubb & Son*, 552 F. Supp. 2d 271 (D. Conn. 2008) (stray remarks of supervisor could not prove employment discrimination where "Plaintiff's evidence of age-based animus is that she overheard [her supervisor] on the telephone stating that 'older people' 'slow down' and 'should retire.' This single remark does not demonstrate that [the supervisor] terminated the Plaintiff because of her age.").[12]

_____

[12]Examples of the "extraordinarily strong showing" of discrimination necessary to overcome the same actor inference include: referring to an age-discrimination plaintiff as an "old fart" on numerous occasions and "old timer," and telling him that certain women were "not for you, you're too old," in conjunction with other disparaging comments and circumstantial evidence that the employer favored younger employees, *see Beecham v. Wyndham Vacation Resorts, Inc.*, No. 11-129 ACK-BMK, 2013 WL 6730755, at *8-11 (D. Haw. Dec. 18, 2013), and calling a female gender-discrimination plaintiff a "premium whore" to her face and in front of other co-workers, among other comments and actions that demonstrated a bias against women, *see Villareal v. Chubb & Son, Inc.*, No. SACV 11-674 DOC (RNBx), 2012 WL 3151254, at *6-8 (C.D. Cal. July 31, 2012). *See also Juell v. Forest Pharm., Inc.*, 456 F. Supp. 2d 1141, 1155 (E.D. Cal. 2006) (finding "strong case of bias necessary to overcome this inference," where plaintiff offered "evidence that defendant Williams made consistent comments about his age to him and to others [including] a comment about a friend to plaintiff, stating that he would not hire him because he was over fifty and had lost his snap," and telling plaintiff that stepping down at his age "might be good," and then replacing plaintiff with a younger 34-year-old); *Wilson v. Battelle Mem'l Inst.*, No. 11-CV-5130-TOR, 2012 WL 4514510, at *9 (E.D. Wash. Oct. 1, 2012) (plaintiff demonstrated pretext, and overcame same actor inference, by presenting evidence that supervisors "assumed a mission to remove older employees" and wanted to "bring[] in younger people," one supervisor commented that it was time to get "new blood," that management was moving "old timers" out, while another remarked to plaintiff that "he didn't realize you were that old;" and one told him he had been "around for a long, long time").

Another district court found similar statements and conduct insufficient to overcome the inference in *Cozzi v. County of Marin*, 787 F. Supp. 2d 1047, 1058 (N.D. Cal. 2011). In that case, the plaintiff asserted that a supervisor engaged in "direct discriminatory remarks" with other employees on at least three occasions—

> when Melendy informed Grigsby after Grigsby's 2006 performance evaluation that "older employees are set in their ways, and it would be good to have younger people in the department," and that younger people are "more progressive;" when Melendy openly disciplined Joan Monteverdi (a 74–year–old clerical employee) in March 2006, by imposing six counseling sessions because Monteverdi would not retire; and when Melendy made comments about wanting "fresh faces" in the department when Pascale asked why Melendy had appointed Steppler.

*Id.* The district court in *Cozzi* held that "it takes more than vague statements such as the ones cited by [plaintiff]" to survive summary judgment. *Id.* at 1060.

Likewise, Kannel's statements, considered together with the disputed number of tours afforded Maybin and the effect on his sales numbers, do not amount to the "extraordinarily strong showing" of discrimination necessary to survive Hilton's renewed motion.[13] Unlike those cases in which courts found an "extraordinarily strong showing" of discrimination, the record in this case is devoid of the requisite type of disparaging comments or other circumstantial evidence, such as evidence

---

[13]In making this assessment of the Count I age-discrimination claim, the Court does not consider the Count II hostile work environment claim, including the related issues of Wilson's purportedly hostile conduct. While Wilson's acts allegedly affected Maybin's sales, they did not contain allegations of age-based animus.

that Hilton replaced Maybin with a younger sales agent or that individuals outside of Maybin's protected class were treated more favorably. Maybin thus falls far short of making the "extraordinarily strong showing of discrimination" that this Circuit has determined is necessary to overcome the same actor inference.

## <u>CONCLUSION</u>

For the foregoing reasons, the Court GRANTS Defendant's Renewed Motion for Summary Judgment as to Count I. Dkt. No. 45.

IT IS SO ORDERED.

DATED: September 27, 2018 at Honolulu, Hawai'i.



Derrick K. Watson
United States District Judge

---

*Maybin v. Hilton Grand Vacations Company, LLC*, CV NO. 17-00489 DKW-KSC; **ORDER GRANTING DEFENDANT'S RENEWED MOTION FOR SUMMARY JUDGMENT**